IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| RICKY KOEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:21-cv-02166-HLT-TJJ |
| ) | |
| CITIZENS MEDICAL CENTER, INC., ) | |
| DANIEL P. KUHLMAN, M.D., ) | |
| SAM R. FUNK, O.D., P.A., and ) | |
| SAM RODGER FUNK, O.D., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion to Compel Against All Defendants (ECF No. 70). Pursuant to Fed. R. Civ. P. 37, Plaintiff asks the Court for an order compelling Defendants Citizens Medical Center, Inc. ("Citizens"), Daniel Kuhlman, M.D. ("Dr. Kuhlman"), Sam Funk, O.D., P.A. ("Dr. Funk"), and Sam Rodger Funk, O.D. ("Corporate Funk") to produce information responsive to Plaintiff's requests for production ("RFP") seeking each defendant's current net worth. Specifically, Plaintiff seeks an order compelling Citizens to respond to Plaintiff's Third RFP No. 25 to Citizens, Dr. Kuhlman to respond to Plaintiff's Second RFP No. 22 to Dr. Kuhlman, and Dr. Funk and Corporate Funk to respond to Plaintiff's Second RFP No. 22 to Dr. Funk and Corporate Funk. Plaintiff contends that this discovery is relevant to his claims for punitive damages and is appropriate at this stage of the litigation. Defendants objected that Plaintiff's claim for punitive damages is spurious, the information requested is irrelevant to Plaintiff's negligence and personal injury claims, the scope of the information requested should be limited, and production of the requested financial information is premature.

Plaintiff argues Defendants' net worth is relevant to his punitive damages claim, not his substantive claims. Defendants concede their net worth could assist the Court in determining an amount of punitive damages, so the Court will not address Defendants' argument that their net worth is irrelevant to Plaintiff's substantive claims. The Court will address Defendants' arguments that the claim for punitive damages is spurious, that the scope of the information requested should be limited, and that production of the requested financial information is premature. For the reasons discussed below, the Court will grant Plaintiff's motion, subject to certain conditions.

**I.  Relevant Background**

On April 10, 2019, Plaintiff presented to the Emergency Department at Citizens Medical Center in Colby, Kansas with a complaint of an injury to the right eye. Plaintiff worked on a local farm when a fence wire snapped, striking his right eye. Dr. Kuhlman, the Emergency Department on-call physician, arrived and ordered a CT scan of Plaintiff's head and orbits. Dr. Kuhlman called Dr. Funk, a local optometrist, to come to the hospital and examine Plaintiff.

Dr. Funk arrived at the hospital and examined Plaintiff's right eye. Dr. Funk noted Plaintiff's pupils were functioning and diagnosed Plaintiff with a "closed" globe. He created a treatment plan involving eye drops and pain medications. Dr. Funk also called a Garden City ophthalmologist, Dr. Fry, to schedule Plaintiff's next-day appointment for further evaluation. Dr. Funk told Dr. Fry that Plaintiff had a "closed" globe and a negative "Siedel Test." Dr. Kuhlman was present and did not participate in the discussion. Instead, he left the exam room and attended to other hospital business. Dr. Funk did not tell Dr. Fry about the pending CT scan, and Dr. Funk left the hospital before the radiologist interpreted the results.

After Dr. Funk left the hospital, the off-site radiologist called Dr. Kuhlman and read Plaintiff's CT scan results over the phone, stating the results indicated a "possible" ruptured globe.

Dr. Kuhlman did not notify Dr. Funk about the CT scan results, and he did not change Plaintiff's treatment plan to reflect the results. The hospital discharged Plaintiff with instructions to see Dr. Fry the next morning. Plaintiff was not given instructions for a ruptured globe, which would have included to maintain bedrest with his right eye facing up and to avoid bending over, straining, and other activities that would further risk injury to the right eye.

That night, Plaintiff and his wife drove to Garden City. The next morning, Dr. Fry examined Plaintiff and sent Plaintiff to an emergency eye surgery facility in Wichita. That evening, after examination by an ophthalmologist specializing in eye trauma, Plaintiff underwent surgery to close and repair his ruptured right globe, but he lost his vision in his right eye.

**II.     Requested Discovery**

Plaintiff served a request for production of documents on each defendant on September 30, 2022. These requests include the following:

> **Produce information regarding your current net worth, including but not limited [to] the most recent current and annual reports and current financial statements, balance sheets, profit and loss statements, income statements, federal tax returns, applications for credit, and any other document reflecting your overall current net worth.[1]**

Defendants objected to the discovery request. Plaintiff conferred with Defendants, as required by Fed. R. Civ. P. 37(a)(1) and D. Kan. 37.2. Plaintiff moved to compel production of documents responsive to the requests.

**III.    Analysis**

In response to Plaintiff's motion to compel, Defendants argue they should not be required to produce the requested financial information because Plaintiff's claim for punitive damages is

---

[1] Plaintiff's Third RFP No. 25 to Citizens, Plaintiff's Second RFP No. 22 to Dr. Kuhlman, and Plaintiff's Second RFP No. 22 to Dr. Funk and Corporate Funk.

spurious.  Further, Defendants argue it would be premature to produce the requested financial information at this point in the case.  Finally, Defendants argue the scope of the requested financial information should be limited.

### A. Plaintiff's Claim for Punitive Damages is not Spurious

Generally, information about a party's current net worth or financial condition is relevant to the issue of punitive damages.[2]  "When a punitive damages claim has been asserted by the plaintiff, a majority of federal courts permit pretrial discovery of financial information of the defendant without requiring plaintiff to establish a *prima facie* case on the issue of punitive damages."[3]  But a plaintiff seeking discovery of the defendant's financial condition in support of a claim for punitive damages must show the claim is not spurious.[4]  To prove a claim is not spurious, a party must provide specific factual allegations to support its claim for punitive damages.[5]

---

[2] *Gust v. Wireless Vision, L.L.C.*, No. 15-2646-KHV, 2015 WL 9462078, at *5 (D. Kan. Dec. 24, 2015) (citing *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, 130 F.R.D. 149, 152 (D. Kan. 1990)). *See also Aerotech Res., Inc. v. Dodson Aviation, Inc.*, No. 00-2099-CM, 2001 WL 395397, at *2 (D. Kan. Apr. 11, 2001) ("[I]f a plaintiff has alleged sufficient facts to claim punitive damages against a defendant, information of the defendant's net worth or financial condition is relevant because it can be considered in determining punitive damages.").

[3] *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.,* 130 F.R.D. 149, 151 (D. Kan. 1990).

[4] *See id.* at 152 (plaintiff must show that his claim for punitive damages was not spurious in order to be entitled to discovery of the defendant's financial condition). *See also Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 950282, at *13 (D. Kan. Mar. 26, 2007) ("[T]he Court need only find that the claims for punitive damages are not spurious for discovery [of the defendants' financial information] to proceed.").

[5] *Gust*, 2015 WL 9462078, at *5; *See also McCloud v. Bd. of Geary Cty. Comm'rs*, No. 06-1002-MLB-DWB, 2008 WL 1743444, at *4 (D. Kan. Apr. 11, 2008) (finding plaintiffs provided sufficient factual background to establish that their claim for punitive damages was not spurious); *Heartland*, 2007 WL 950282, at *13 (finding plaintiff made allegations sufficient to support its punitive damages claims).

In determining whether Plaintiff's punitive damages claim is spurious, the Court looks to whether Plaintiff has made sufficient allegations—short of those needed to establish a *prima facie* case—to support a claim for punitive damages under the applicable law. In this case, Plaintiff is seeking punitive damages based upon violations of the Emergency Medical Treatment and Labor Act ("EMTALA") and medical malpractice claims. Specifically, Plaintiff argues Dr. Kuhlman was highly reckless in discharging Plaintiff despite receiving CT scan results indicating a possible ruptured globe and failing to recommend the proper course of treatment for a ruptured globe. Plaintiff also argues that Dr. Funk was grossly negligent in misdiagnosing Plaintiff's ruptured globe which led to Plaintiff's loss of sight in his right eye. Based upon these allegations, the Court finds Plaintiff made a sufficient showing to establish his punitive damages claim is not spurious, and thus met the threshold requirements for discovery of Defendants' financial condition.

### B. The Scope of the Requests for Defendants' Financial Information Must be Limited

Defendants argue Plaintiff's request for financial information regarding their net worth goes beyond the limited scope necessary to determine their net worth by requesting federal tax returns, applications for credit, and "any other document reflecting [Defendants'] overall current net worth." Plaintiff argues, only with regard to Dr. Funk, that his tax returns and applications for credit and other similar records are necessary because Dr. Funk is a sole proprietor of his corporation and his self-employment income likely does not possess the other types of objective documentation of net worth.

When discovery appears relevant on its face, the party resisting the discovery has the burden to establish facts justifying its objections by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is

of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[6]

In this case, the Court finds all the Requests appear facially relevant to Plaintiff's claim for punitive damages in that they seek documents pertaining to Defendants' financial condition. Defendants, as the party resisting the requested discovery, thus have the burden of justifying their relevancy objections.[7] Defendants do not specifically address the lack of relevance of the specific documents (i.e., federal tax returns, applications for credit) sought by each Request, but rather argue generally that Plaintiff made broad requests. The Requests in dispute ask Defendants to produce information regarding their current net worth, including but not limited to the most recent current and annual reports and current financial statements, balance sheets, profit and loss statements, income statements, federal tax returns, applications for credit, and any other document reflecting their overall current net worth.

Defendants are correct that multiple cases in this District have limited the scope of discoverable financial information relevant to the issue of punitive damages to the defendant's most recent annual reports and current financial statements.[8] Reviewing the discovery Requests under this standard, the Court finds Defendants' federal tax returns, applications for credit, and "any other document reflecting their overall current net worth" go beyond what is necessary or

---

[6] *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652 (D. Kan. 2004).

[7] *Id.*

[8] *See Heartland*, 2007 WL 950282, at *15 (limiting financial information required from the defendants concerning the issue of punitive damages to their most recent annual reports and current financial statements measured at the time set for defendants to produce such information); *Audiotext Commc'ns Network, Inc. v. US Telecom, Inc.*, No. 94-2395-GTV, 1995 WL 625962, at *4 (D. Kan. Oct. 5, 1995) (finding the most recent annual reports and current financial statements of the plaintiffs suffice to determine punitive damages).

reasonable for Plaintiff to show Defendants' net worth or financial condition, if their claim for punitive damages is allowed at trial. In addition, the Requests seek Defendants' tax returns with no showing by Plaintiff of a "compelling need for the returns because the information contained therein is not otherwise readily obtainable."[9]

The Court finds only Defendants' most recent annual reports and current financial statements, balance sheets, profit and loss statements, and income statements are required to show Defendants' current net worth or financial condition. The Court will therefore limit Plaintiff to Defendants' most recent annual reports and current financial statements, balance sheets, profit and loss statements, and income statements.

### C. Delaying Production Will Address Defendants' Prematurity Objections

Defendants urge the Court to follow its own precedent and other courts that have postponed disclosure of a defendant's confidential and proprietary financial records until after a ruling on any dispositive motion challenging the plaintiff's claim for punitive damages. In *Heartland Surgical Specialty Hospital, LLC v. Midwest Division, Inc*,[10] defendants made a similar objection to producing their financial information relevant to punitive damages. Magistrate Judge Bostwick granted the motion to compel production of the defendants' financial information but stayed production until after a dispositive motion ruling concerning the punitive damages claim. In his ruling, he noted that courts in the District of Kansas have followed a "varied practice" in determining whether to delay discovery of financial information relating to a punitive damages claim.[11]

---

[9] *Audiotext*, 1995 WL 625962, at *11.

[10] No. 05-2164-MLB-DWB, 2007 WL 950282, at *13 (D. Kan. Mar. 26, 2007).

[11] *Id*.

While there are no motions pending, Defendants have represented that they intend to file a dispositive motion on the issue of punitive damages.[12] The Court will follow the procedure employed by Judge Bostwick in *Heartland* and stay production of the requested financial information until after a ruling has been entered on any forthcoming motion on the issue of punitive damages. Delaying the production to a point closer to trial will also result in Defendants producing more "current" information than would be produced now.[13]

The Court therefore stays production of Defendants' responses until the District Judge determines whether Plaintiff's claims for punitive damages survive any dispositive motion filed by Defendants. Thus, Defendants will not be required to produce the financial documents and information ordered herein until fourteen (14) days following a ruling on any dispositive motion filed by Defendants pertaining to the issue of punitive damages, provided that Plaintiff's claims for punitive damages remain in the case.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel Against All Defendants (ECF No. 70) is **GRANTED**, subject to the terms of this order. **Within fourteen (14) days after** the Court rules on any dispositive motion relating to punitive damages, provided that Plaintiff's claim for punitive damages remains in the case, Defendants shall produce documents and information responsive to these requests as limited by this order: Defendant Citizens shall produce documents and information in response to Plaintiff's Third RFP No. 25 to Citizens, Defendant Dr. Kuhlman shall produce documents and information in response to Plaintiff's Second RFP No. 22 to Dr. Kuhlman, and Defendants Dr. Funk and Corporate Funk shall produce

---

[12] The Scheduling Order deadline for the parties to file dispositive motions in this case is March 1, 2023.

[13] *Learjet, Inc. v. MPC Prods., Corp.*, No. 05-1074-MLB-DWB, 2007 WL 2287836, at *4 (D. Kan. Aug. 8, 2007).

documents and information in response to Plaintiff's Second RFP No. 22 to Dr. Funk and Corporate Funk.

**IT IS SO ORDERED.**

Dated this 19th day of January, 2023.

                                                                           _____
                                                                           Teresa J. James
                                                                           U. S. Magistrate Judge