IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **RICKY KOEL,** | ) |
| | ) |
|         **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. 21-cv-2166-HLT-TJJ |
| | ) |
| **CITIZENS MEDICAL CENTER, INC.,** | ) |
| **DANIEL P. KUHLMAN, M.D.,** | ) |
| **SAM R. FUNK, O.D., P.A., and** | ) |
| **SAM RODGER FUNK, O.D.,** | ) |
| | ) |
|         **Defendants.** | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion to Strike Defendant Dr. Funk's New and Undisclosed Expert Opinion by Dr. Cestari, or in the Alternative, Motion to Extend Deadline for Plaintiff's Rebuttal Expert Disclosures (ECF No. 102). Pursuant to Federal Rules of Civil Procedure 26(a)(2)(A), 26(a)(2)(D), and 37(c), Plaintiff asks the Court to enter an order striking Dr. Cestari's theory of causation based on "traumatic optic neuropathy" ("TON"). Plaintiff argues Dr. Cestari's new theory of causation was not properly and timely disclosed under Fed. R. Civ. P. 26 and the Court's Scheduling Order, and the late disclosure of Dr. Cestari's TON theory of causation of Plaintiff's blindness is a surprise and prejudicial to Plaintiff given the late stage of discovery. Defendants argue the supplementation of Dr. Cestari's report is timely, and even if the report is untimely, Plaintiff is not prejudiced or surprised by the opinion and the late disclosure is harmless. As set forth below, the Court grants Plaintiff's motion in part.

**I.     Factual Background**

The following facts were gleaned from the record in this case. On April 10, 2019, Plaintiff presented to the Emergency Department at Citizens Medical Center ("CMCI") in Colby, Kansas

1

with a complaint of an injury to the right eye. Plaintiff worked on a local farm when a fence wire snapped, striking his right eye. Dr. Kuhlman, the Emergency Department on-call physician, arrived and ordered a CT scan of Plaintiff's head and orbits. Dr. Kuhlman called Dr. Funk, a local optometrist, to come to the hospital and examine Plaintiff.

Dr. Funk arrived at the hospital and examined Plaintiff's right eye. Dr. Funk noted Plaintiff's pupils were functioning and diagnosed Plaintiff with a "closed" globe. He created a treatment plan involving eye drops and pain medications. Dr. Funk also called a Garden City ophthalmologist, Dr. Fry, to schedule Plaintiff's next-day appointment for further evaluation. Dr. Funk told Dr. Fry that Plaintiff had a "closed" globe and a negative "Siedel Test." Dr. Kuhlman was present and did not participate in the discussion. Instead, he left the exam room and attended to other hospital business. Neither Dr. Funk nor Dr. Kuhlman told Dr. Fry about the pending CT scan, and Dr. Funk left the hospital before the radiologist interpreted the results.

After Dr. Funk left the hospital, the off-site radiologist called Dr. Kuhlman and read Plaintiff's CT scan results over the phone, stating the results indicated a "possible" ruptured globe. Dr. Kuhlman did not notify Dr. Funk about the CT scan results, and he did not change Plaintiff's treatment plan to reflect the results. The hospital discharged Plaintiff with instructions to see Dr. Fry the next morning. Plaintiff was not given instructions for a ruptured globe, which would have included to maintain bedrest with his right eye facing up and to avoid bending over, straining, and other activities that would further risk injury to the right eye.

That night, Plaintiff and his wife drove to Garden City. The next morning, Dr. Fry examined Plaintiff and sent Plaintiff to an emergency eye surgery facility in Wichita. That evening, after examination by an ophthalmologist specializing in eye trauma, Plaintiff underwent surgery to close and repair his ruptured right globe, but he lost vision in his right eye.

## II. Procedural Background

Pursuant to the Third Amended Scheduling Order, the deadline for Plaintiff to disclose his experts was October 10, 2022, the deadline for Defendants to disclose their experts was November 28, 2022, and the deadline for disclosure of rebuttal experts was December 12, 2022.[1] The parties' Expert Discovery deadline was March 30, 2023.[2] In addition, the initial Scheduling Order included the following provision regarding Fed. R. Civ. P. 26(e), requiring final expert supplemental disclosures 40 days before the discovery deadline:

> Supplementations of those disclosures under Fed. R. Civ. P. 26(e) must be served at such times and under such circumstances as required by that rule. In any event, *final supplemental disclosures must be served no later than 40 days before the deadline for completion of all discovery*. The supplemental disclosures served 40 days before the deadline for completion of all discovery must identify all witnesses and exhibits that probably or even might be used at trial. The opposing party and counsel should be placed in a realistic position to make judgments about whether to take a particular deposition or pursue follow-up "written" discovery before the time allowed for discovery expires.[3]

On October 10, 2022, Plaintiff timely disclosed seven expert witnesses, two of whom were eye surgeons: Dr. Wong and Dr. Lefkowitz. The expert reports authored by Dr. Wong and Dr. Leftkowitz opined the cause of Plaintiff's irreparable injury to the retina resulting in total blindness was the delay in repair of the ruptured globe.[4] On November 28, 2022, Defendants timely disclosed four retained experts, one of whom is Dr. Cestari. In Dr. Cestari's November 27, 2022, expert report, he opined the injury to the retina involved the macula, the injury occurred at the moment of the accident in the field, and the injury was not repairable under any circumstances.

---

[1] ECF No. 41.

[2] ECF No. 88.

[3] ECF No. 12, ¶ 2c (emphasis added).

[4] ECF No. 56.

On December 13, 2022, Plaintiff served written expert rebuttal reports of Dr. Wong and Dr. Lefkowitz, purportedly rebutting the opinion that injury to the retina was irreparable as described in Dr. Cestari's report.

It is undisputed that, during his March 23, 2023, deposition, Dr. Cestari disclosed a new theory of causation. Dr. Cestari testified Plaintiff's blindness could have been caused in part by "traumatic optic neuropathy" ("TON"), which involves an injury to the optic nerve, not the retina. Dr. Cestari opined the TON likely occurred in the field when the wire hit Plaintiff, TON is irreparable, and the TON in part caused the total blindness in Plaintiff's right eye.[5] In his deposition, Dr. Cestari explained he thought about TON while preparing his report in November but did not think it was sufficiently relevant to include in the report. Then, while preparing for his deposition, including reading an article produced by Plaintiff's expert along with the depositions of Plaintiff's experts, Dr. Cestari stated he started to think more about TON and it seemed a reasonable explanation for Plaintiff's blindness in his right eye.

On March 27, 2023, Plaintiff's expert, Dr. Wong, testified briefly during her deposition that Plaintiff did not have TON because the medical records and D. Funk's testimony indicated Plaintiff's pupils were functioning during Dr. Funk's slit lamp examination at CMCI on April 10, 2019, which is inconsistent with TON. On March 28, 2023, Plaintiff filed a motion to strike the new TON theory of causation.

**III.   Analysis**

Plaintiff argues Dr. Cestari's new TON theory of causation ("new causation theory") was not properly and timely disclosed under Fed. R. Civ. P. 26 and the Court's Scheduling Order, and

---

[5] Neither side has provided the Court a copy of the relevant pages from Dr. Cestari's deposition. The summary included here is based on quotes from the deposition and the parties' representations regarding the deposition testimony, which were included in the parties' briefing.

Defendants' untimely disclosure is a surprise and prejudicial to Plaintiff given the late stage of discovery.  Defendants argue the supplementation of Dr. Cestari's report at his deposition was timely, and even untimely, Plaintiff is not prejudiced or surprised by the opinion and the late disclosure is harmless.

*A.  Defendants' Disclosure of Dr. Cestari's New Causation Theory was Untimely*

Federal Rule of Civil Procedure 26(a)(2) governs expert witness disclosures. The Rule requires a party to disclose the identity of any expert witness along with a written report if the witness is one retained or specially employed to provide expert testimony in the case. The Rule directs the disclosures to be made at the times and in the sequence the court orders. The Rule also requires parties to supplement expert disclosures when required under Rule 26(e).  Rule 26(e) states, "For an expert whose report must be disclosed under Rule 26(a)(2)(B), . . . changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due."  Under Rule 26(a)(3), "[u]nless the court orders otherwise, these [supplemental pretrial] disclosures must be made at least 30 days before trial."

On March 23, 2023, Defendants disclosed a new causation theory during the deposition of Dr. Cestari.  This disclosure constitutes a supplementation of Dr. Cestari's November 27, 2022, written report, containing an entirely different causation theory. Defendants argue, citing Rule 26(e), Rule 26(a)(3), and the Court's email from April 11, 2023, that the deadline for disclosure of this new theory would not be until April 20, 2023. They argue, "Per the Court's email [of April 11, 2023], the parties' Rule 26(a)(3) pretrial disclosures are not due until April 20, 2023." [6]

---

[6] ECF No. 105, at 4. While creative, Defendant's argument is baseless.  The April 11, 2023, email from the Court says nothing about supplemental disclosures, rather it merely stated: "This confirms the Final Pretrial Conference will be held in-person on April 26, 2023, at 10:00 a.m. before Judge James. The proposed pretrial order will now be due on April 20, 2023." (ECF No. 105-1; *See also*

Neither Rule 26(e), Rule 26(a)(3), or the Court's email indicated the parties' supplementation deadline coincided with the parties' deadline for submission of the proposed pretrial order, and Defendants fail to support the assertion that their supplemental disclosures were not due until the pretrial order submission deadline.

Dr. Cestari's supplementation of his initial report clearly did not meet the supplemental expert disclosure deadline. Under Rule 26(a)(3), "*[u]nless the court orders otherwise*, these [supplemental pretrial] disclosures must be made at least 30 days before trial." Defendants ignore the italicized language in their argument. Here, the Court ordered otherwise in its July 8, 2021 Scheduling Order by requiring any "final supplemental disclosures must be served no later than 40 days before the deadline for completion of all discovery."[7] Therefore, any supplementation of the parties' expert reports was due 40 days before the parties' Expert Discovery deadline of March 30, 2023, that is February 21, 2023.[8] Thus, Defendants' disclosure of Dr. Cestari's new causation theory on March 23, 2023 was untimely under Rule 26 and the Court's Scheduling Order.

### B. Defendants Late Disclosure of Dr. Cestari's New Theory Was Not Substantially Justified

To ensure compliance with Rule 26 disclosure requirements, Rule 37(c)(1) provides "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party

---

ECF No. 104). Defendants' attempt to conflate the pretrial order submission deadline with the final supplemental disclosure deadline is dubious.

[7] ECF No. 12, ¶ 2c. The quoted language is standard in the District of Kansas form scheduling order and is well-established in this District. Undoubtedly, all parties were aware of this final supplementation deadline.

[8] ECF No. 88.

6

is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."[9] The determination of whether a Rule 26(a) violation is "substantially justified" or "harmless" is entrusted to the broad discretion of the district court.[10] The district court is not required to make explicit findings concerning substantial justification or the harmlessness of a failure to disclose.[11] Nevertheless, the Tenth Circuit has held the following factors should guide the district court's discretion in determining whether to allow a party to use information or a witness to supply evidence at trial: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."[12]

In applying Rule 37(c)(1), "the court must first determine whether substantial justification for failing to make the required disclosures exists."[13] If the party who failed to make the required disclosures does not demonstrate substantial justification, then the court must determine whether the failure to disclose was harmless.[14] "The failure to disclose is considered harmless 'when there

---

[9] Fed. R. Civ. P. 37(c)(1).

[10] *Neiberger v. Fed Ex Ground Package Syst., Inc.,* 566 F.3d 1184, 1191–92 (10th Cir. 2009) (citing *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 993 (10th Cir. 1999)).

[11] *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 953 (10th Cir. 2002) (quoting *Woodworker's Supply,* 170 F.3d at 993).

[12] *Id*.

[13] *Stewart v. United Parcel Serv., Inc.*, No. 20-2461-JAR-GEB, 2023 WL 143229, at *5 (D. Kan. Jan. 10, 2023).

[14] *Id.*

is no prejudice to the party entitled to the disclosure.'"[15] The burden to demonstrate substantial justification and the lack of harm is on the party who failed to make the required disclosure.[16]

The burden to show the untimely disclosure here was substantially justified or harmless rests with Defendants. Defendants argue Plaintiff should not be surprised by Dr. Cestari's new causation theory, and even if he is surprised, the prejudice can be cured, and the new causation theory would have no disruptive effect on the trial in this case.

Defendants argue the delay in disclosure is substantially justified because Dr. Cestari's new causation theory depended on reports and information made available to him after he authored his November 27, 2022, report. Specifically, Defendants argue they could not have disclosed the new causation theory because Dr. Cestari relied on Dr. Wong and Dr. Lefkowitz's expert reports/citations, served on December 13, 2022, to form his new opinion. The Court is not persuaded by this argument. Dr. Wong and Dr. Lefkowitz's expert rebuttal reports were served December 13, 2023, and Defense counsel provided copies of their deposition transcripts to Dr. Cestari on January 5, 2023, and January 16, 2023, respectively.[17] That was more than a month before the final supplementation deadline and more than two months prior to Dr. Cestari's deposition. Defendants note Dr. Cestari's new causation theory "was solidified in the weeks leading up to his deposition…."[18] Yet, Defendants never served a supplemental report for Dr. Cestari or requested leave to serve such a report out of time. Further, Defendants do not cite any

---

[15] *Umbenhower v. Copart, Inc.*, 222 F.R.D. 672, 675 (D. Kan. 2004) (*quoting Burton v. R.J. Reynolds Tobacco Co.*, 203 F.R.D. 636, 639 (D. Kan. 2001)).

[16] *Id.*

[17] ECF No. 105, at 2.

[18] ECF No. 105, at 5–6.

8

particular new information in the reports/citations which caused Dr. Cestari's to change his causation opinion. Indeed, Dr. Cestari's new causation theory only came out during questioning by Plaintiff's attorney in the middle of Dr. Cestari's deposition. The Court finds Defendant's belated disclosure during Dr. Cestari's deposition was not substantially justified.

### C. The Prejudice to Plaintiff from the Untimely Disclosure can be Cured

Defendants argue the delay is harmless because Plaintiff should have been on notice of the new causation theory, Plaintiff had enough time between the disclosure of Dr. Cestari's new causation theory and the deposition of Dr. Wong to prepare rebuttal to Dr. Cestari's new causation theory, and Dr. Cestari did not entirely change his causation theory, only providing TON as a contributing cause of Plaintiff's blindness. Plaintiff argues Defendants' untimely disclosure is a surprise and prejudicial, and Dr. Cestari engaged in gamesmanship by intentionally waiting until the deposition to disclose his new causation theory.

First, Plaintiff could not have been on notice of the new causation theory when it was first discussed during the March 23, 2023, deposition. It is not reasonable to expect Plaintiff's counsel to be prepared to examine an expert witness such as Dr. Cestari during his deposition on a causation theory not previously mentioned by any expert in the case. Plaintiff's counsel was understandably surprised by Dr. Cestari's first mention of the new causation theory during his deposition.[19] Second, Defendants' argument that Plaintiff had enough time to prepare rebuttal after discovering the new causation theory during Dr. Cestari's deposition is unpersuasive. In the initial Scheduling

---

[19] Defendants liken the handling of Dr. Cestari's new causation theory to Plaintiff's handling of his expert Dr. Wong, who brought previously undisclosed medical literature to her second deposition and testified she reviewed and relied upon the literature as a basis for her opinion. The attempted analogy is unpersuasive. Providing literature that supports previously disclosed opinions at the beginning of an expert deposition is far different than dropping a new causation theory during questioning in a deposition.

Order, the Court emphasized the importance and rationale of timely supplementation.[20] Defendants note that Plaintiff's expert, Dr. Wong, addressed Dr. Cestari's new causation theory during her deposition. However, even presuming Dr. Wong was qualified on that topic, Plaintiff had only one business day between the March 23, 2023, deposition of Dr. Cestari and the March 27, 2023, deposition of Dr. Wong to prepare for rebuttal. More significantly, the expert rebuttal deadline had already passed and Plaintiff had no opportunity for Dr. Wong to reflect and prepare a timely supplemental report or to engage another expert to rebut the TON theory. The Court finds not only that there was an untimely disclosure here, but also that Plaintiff is prejudiced by the untimely disclosure of Dr. Cestari's new causation theory.

However, the Court finds the untimely disclosure harmless because the prejudice to Plaintiff can be cured (without striking Dr. Cestari's opinion). Plaintiff requests, if Dr. Cestari's opinion is not stricken, that Plaintiff be allowed time to file expert rebuttal reports at Defendants' expense within 30 days of a supplemental written report by Dr. Cestari."[21] Defendants have not requested permission to supplement Dr. Cestari's expert report[22] but they do suggest that allowing Plaintiff to supplement his rebuttal expert disclosures would be an appropriate remedy (if the Court were to find Plaintiff entitled to relief, which of course Defendants oppose).[23]

---

[20] ECF No. 12, ¶ 2c.

[21] ECF No. 106, at 7.

[22] Defendants contend Plaintiff was made aware of Dr. Cestari's new causation theory at his deposition and that "satisfies Defendants' obligation to supplement under Rule 26(e)." ECF No. 105, at 4.

[23] ECF No. 105, at 8.

During the April 26, 2023, Final Pretrial Conference, the Court communicated the parties' trial will start on January 22, 2024—more than eight months from now. Further, as Defendants point out, Dr. Cestari's new causation theory has been presented as a contributing cause of Plaintiff's blindness, not a replacement for his original causation theory. This presents a significant but narrow new issue. The Court therefore finds the existing timeframe is sufficient to cure the prejudice of Defendants' untimely disclosure, without affecting the trial date in this case,[24] as follows: The Court will grant Plaintiff 60 days from the date of this Order, that is until July 12, 2023, to serve a supplemental expert rebuttal report or reports strictly limited to the issue of Dr. Cestari's new causation theory. Additionally, the Court will allow Defendants 30 days from the date of this Order, that is until June 12, 2023, to serve a supplemental expert report of Dr. Cestari with the supplementation strictly limited to his new TON causation theory.[25] Given the narrow issue to be addressed in the supplemental expert report(s) and the fact that the discovery deadline and pretrial conference have long since passed, no depositions or other discovery will be allowed. All remaining scheduling order deadlines and the January 22, 2024, trial date remain intact.

Plaintiff's request that Defendants bear the cost of the supplemental expert report(s) obtained by Plaintiff to rebut Dr. Cestari's TON causation theory is denied. Although the disclosure of Dr. Cestari's new causation theory during his deposition testimony was woefully untimely, the Court does not find that Defendants failure to timely disclose was in bad faith or

---

[24] *See Sibley v. Sprint Nextel Corp.*, No. 08-2063-KHV, 2013 WL 1819773, at *8 (D. Kan. Apr. 30, 2013) (finding five-month period before trial sufficient to cure prejudice of untimely disclosure).

[25] If Defendants choose not to supplement Dr. Cestari's report, they shall notify Plaintiff's counsel immediately upon making that decision. In that event, Plaintiff's supplemental expert report(s) shall focus on rebuttal of the TON causation theory as vaguely referenced in Dr. Cestari's deposition.

willful. Moreover, the prejudice to Plaintiff will be cured by the supplemental expert report(s) allowed by this Order and the Court notes that Plaintiff would have had to bear the cost of any supplemental expert reports to rebut Dr. Cestari's TON causation theory if that theory had been timely disclosed. No additional burden is placed on Plaintiff to pay such expenses at this subsequent juncture.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Strike Defendant Dr. Funk's New and Undisclosed Expert Opinion by Dr. Cestari, or in the Alternative, Motion to Extend Deadline for Plaintiff's Rebuttal Expert Disclosures (ECF No. 102) is GRANTED in part and denied in part. The request to strike Dr. Cestari's untimely disclosed expert opinion is denied, however Plaintiff's alternative request that he be allowed to serve an expert rebuttal report or reports strictly limited to the issue of Dr. Cestari's new TON theory of causation is granted.

**IT IS FURTHER ORDERED** that Plaintiff shall file such supplemental expert report(s) by July 12, 2023.

**IT IS FURTHER ORDERED** that Defendants may file a supplemental expert report of Dr. Cestari with the supplementation strictly limited to his new TON causation theory by June 12, 2023.

Dated this 12th day of May, 2023 at Kansas City, Kansas.

Teresa J. James
U.S. Magistrate Judge